UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-07-66-B-W |
| | ) | |
| ROCHELLE KENNEY | ) | |

**ORDER ON DEFENDANT'S MOTION FOR TEMPORARY RELASE AND
TRANSPORT ORDER**

Incarcerated while awaiting sentencing, the Defendant moves for a temporary release
from prison to attend her grandmother's wake and funeral. Pursuant to 18 U.S.C. § 3145(c), the
Court grants the motion, finding that the Defendant does not represent a risk of flight or a danger
to the safety of other people or the community and that exceptional circumstances exist to justify
her brief release.

**I.      Statement of Facts**

On June 9, 2009, Rochelle Kenney pleaded guilty to health care fraud, a violation of 18
U.S.C. § 1347, and distribution of a Schedule II controlled substance (methadone), a violation of
21 U.S.C. § 841(a)(1).    As § 841(a)(1) is "an offense for which a maximum term of
imprisonment of ten years or more is prescribed in the Controlled Substances Act," Ms. Kenney
was subject to the mandatory detention provision of 18 U.S.C. § 3143(a), and the Court ordered
her detained pending the imposition of sentence. The sentencing hearing, which addresses in
part whether her criminal conduct resulted in the death of another person, is scheduled for March
1, 2010.

On December 29, 2009, Ms. Kenney moved for temporary release and a transport order.
*Def.'s Mot. for Temp. Release and Transport Order* (Docket # 169) (*Def.'s Mot.*). She stated
that her grandmother had passed away on December 25, 2009, and she asked to be released from

prison to attend the visiting hours in Rockland, Maine from 6:00–7:00 p.m. on January 4, 2010 and the funeral in Augusta, Maine the next day. *Id.* The Government objects. *Gov't's Resp. to Def.'s Mot. for Temp. Release and Transport Order* (Docket # 170) (*Gov't's Resp.*). The basis of the Government's objection is that the Defendant has not satisfied the "compelling reason" limitation of 18 U.S.C. § 3142(i).

## II. Discussion

In the Court's view, there is another statutory provision, 18 U.S.C. § 3145(c), that provides authority to release a defendant pending imposition of sentence. Section 3145(c) reads in pertinent part:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). The First Circuit addressed this issue in an unpublished opinion. *United States v. Weiner*, No. 92-1708, 1992 U.S. App. LEXIS 28794, at *1 (1st Cir. Jul. 31, 1992). Although the circuit court in *Weiner* concluded that the defendant had not demonstrated exceptional circumstances for release under § 3145(c), its discussion assumed that if exceptional circumstances had been proven, § 3145(c) could authorize release pending appeal. *Id.* at *3. Every other circuit court that has considered the question has concluded that § 3145(c) authorizes a district court to order release, even in an otherwise mandatory detention case, so long as the defendant meets the statutory requirements. *See United States v. Goforth*, 546 F.3d 712, 714-15 (4th Cir. 2008); *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) (stating that "a defendant convicted of a crime of violence and awaiting sentencing who cannot satisfy the criteria set forth in § 3143(a)(2) may nevertheless be released if (1) the district court finds that the conditions of

release set forth in § 3143(a)(1) have been met, *and* (2) 'it is clearly shown that there are exceptional reasons why [the defendant's] detention would not be appropriate'") (quoting 18 U.S.C. § 3145(c)); *United States v. Garcia*, 340 F.3d 1013, 1014 n.1 (9th Cir. 2003); *United States v. Cook*, 42 Fed. Appx. 803, 804 (6th Cir. 2002); *United States v. Mostrom*, 11 F.3d 93, 94 (8th Cir. 1993) (per curiam); *United States v. Jones*, 979 F.2d 804, 805 (10th Cir. 1992) (per curiam); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) (per curiam).

To qualify for release, a defendant must first meet the "conditions of release set forth in section 3143(a)(1) or (b)(1)." 18 U.S.C. § 3145(c). Each provision mandates that the defendant demonstrate "that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1), (b)(1). Here, a federal grand jury indicted Ms. Kenney on September 24, 2007, and she was arrested the next day. *Indictment* (Docket # 1); *Warrant of Arrest* (Docket # 8). Ms. Kenney was ordered released on bail on September 26, 2007. *Order Setting Conditions of Release* (Docket # 16). Ms. Kenney generally complied with the conditions of release, except for an incident in March, 2008, when there was a violation question, which resulted in the voluntary imposition of more stringent conditions. *Mot. to Modify Conditions of Release by United States* (Docket # 89); *Order Granting Without Ob. Mot. to Modify Conditions of Release* (Docket # 90). Since then, there has been no suggestion that Ms. Kenney failed to comply with the more restrictive conditions of release. *See Gov't's Resp.* at 4 (stating that "the defendant was generally compliant while on bail"). Further, Ms. Kenney appeared before the Court on June 9, 2009, knowing that she would likely be detained at that time, and entered a plea of guilty to two serious federal crimes. The Court concludes that Ms.

Kenney has satisfied the "conditions of release set forth in section 3143(a)(1) or (b)(1)."  18 U.S.C. § 3145(c).

To qualify for release, however, even if she satisfies § 3143(a)(1) or (b)(1), a defendant must still clearly show that there are "exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c).  "'Exceptional' is defined as 'being out of the ordinary: uncommon, rare.'"  *United States v. Wages*, 271 Fed. Appx. 726 (10th Cir. 2008) (quoting *Webster's Third New Int'l Dictionary* (Unabridged) 791 (G. & C. Merriam Co. 1976)); *Lea*, 360 F.3d at 403 (stating that exceptional circumstances exist where there is "a unique combination of circumstances giving rise to situations that are out of the ordinary") (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991)).  The test under § 3145(c) is "necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"  *Lea*, 360 F.3d at 403.  At the same time, circumstances that are "purely personal" do not typically rise to the level of "exceptional" justifying release.  *Id.* (quoting *United States v. Lippold*, 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001)).[1]

From the Court's perspective, the death of a family member, even a close family member, does not necessarily cross the threshold from common to exceptional.  The death of close family members, though infrequent, is after all inevitable.  The additional factors that make this situation exceptional include: (1) that the wake and funeral are for the Defendant's grandmother, not a more remote relative or friend; (2) that the Defendant is requesting two discrete releases of a handful of hours each, enough time to attend visiting hours the evening

---

[1] Although not dispositive, the Court notes that once a defendant is sentenced, a warden is authorized to temporarily release a defendant under prescribed conditions "to visit a designated place for a period not to exceed thirty days, and then to return to the same or another facility, for the purpose of attending a funeral of a relative."  18 U.S.C. § 3622(a)(2).  If a warden is authorized to allow a sentenced defendant to attend a funeral of a relative, it would seem a district court would be similarly authorized for a defendant not yet sentenced.

before the funeral and the funeral itself the next day; (3) that the Defendant does not propose to remain out of prison overnight; (4) that her mother and brother have offered to act as her custodian during the period of release; (5) that the wake and funeral will take place within a relatively short distance from the jail in which Ms. Kenney has been incarcerated; (6) that it will not be necessary to cross or be near state or national lines to attend the funeral services; (7) that the Defendant voluntarily admitted her guilt; (8) that the crimes for which she now stands convicted do not militate against her temporary release; (9) that Ms. Kenney's criminal history does not contain any convictions for crimes of violence or escape, and (10) that there has been no suggestion that the Defendant has failed to comply with prison rules and regulations during her period of incarceration.

The slate is not entirely clean for Ms. Kenney and the Court understands the Government's consternation. Ms. Kenney did not have a perfect record during the pretrial period. Moreover, she has pleaded guilty to serious crimes involving the misuse of prescriptive medication, and one of the unanswered questions is whether by her actions she caused the death of her brother, an issue that the Court has not yet resolved. There is a certain irony in Ms. Kenney's earnest petition to attend the funeral of one relative when the Government has charged her with causing the death of another. Nevertheless, on balance, the Court finds she has demonstrated exceptional circumstances within the meaning of the statute.

## III.   Conclusion

The Court finds no basis to order the United States Marshal to transport Ms. Kenney around the state of Maine to attend the wake and funeral and DENIES her motion for a transport order.

The Court GRANTS Rochelle Kenney's Motion for Temporary Release, but DENIES her motion for a transport order (Docket # 169).[2]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 30th day of December, 2009

---

[2] The Court ordered the parties to consult and propose a set of stringent conditions and restrictions that will, to the extent possible, assure Ms. Kenney's good behavior during the brief period of her release and her timely return to prison.